IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-03252-CMA-KLM

JOHN LOUIS ATKINS,

        Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,
T. WARD, Corrections Officer/Agent,
M. ARVIZA, Supervisor of Education/Agent, and
RENE G. GARCIA, Warden, FCI Englewood,

        Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

## ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX

        This matter is before the Court on Defendants' **Motion to Dismiss** [Docket No. 47;

Filed August 3, 2012] (the "Motion").   The Motion is referred to this Court for

recommendation [#48].  On August 30, 2012, Defendants filed a Supplement [#53] to the

Motion.  On September 19, 2012, Plaintiff filed a Response [#55] in opposition to the

Motion.  Defendants did not file a Reply.  The Court has reviewed the briefing, the case file,

and the applicable law, and is fully advised in the premises.  For the reasons stated below,

the Court respectfully recommends that the Motion [#47] be **GRANTED** and that Plaintiff's

Complaint be **DISMISSED without prejudice**.

### I.  Background

        Plaintiff is a *pro se* litigant formerly in the custody of the Federal Bureau of Prisons

("Defendant BOP"). *Compl.* [#1]; *Supplement* [#53]. Plaintiff initiated this lawsuit pursuant to 28 U.S.C. § 1331 and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). *Compl.* [#1] at 4. In short, he brings three claims in connection with his confinement: (1) "retaliation from staff and conspiracy to deprive rights" pursuant to 28 U.S.C. § 1985(3) ("Claim One"); (2) "unconstitutionality of 28 CFR § 544.70 through 544.831 and F.B.O.P.'s implementation of PS; 5350.28 Literacy Program (GED Standard)" ("Claim Two"); and (3) "failure to provide adequate and timely medical treatment" ("Claim Three"). *Id.* at 5, 8, 14.

In addition to Defendant BOP, Plaintiff names three Defendants: (1) Rene G. Garcia ("Garcia"), Warden of FCI Englewood during the period underlying these events, November 2009 through May 2011; (2) T. Ward ("Ward"), a Corrections Officer who was in charge of the Upper West Unit at the time one of the incidents underlying this lawsuit occurred; and (3) M. Arviza ("Arviza"), the Supervisor of the Education Department ("SOE") at FCI Englewood. *Compl.* [#1] at 2-3.

Plaintiff does not contest Defendants' summary of Plaintiff's detailed allegations, and so, for the most part, the Court adopts that summary here. In connection with Claim One, Plaintiff asserts that on January 22, 2011, his First Amendment rights were violated by Defendant Ward when Defendant Ward informed him and another inmate that "unauthorized meetings" were not allowed. *Compl.* [#1] at 5, 21. This incident occurred when Plaintiff and another inmate entered a "utility closet off the main hallway" where they were "talking quietly for about five minutes." *Id.* at 5. The Complaint and attached documents state that Plaintiff and this other inmate were talking for several minutes when

-2-

Defendant Ward opened the door and asked them why they were having an "unauthorized meeting." *Id.* Plaintiff asserts that there was "nothing at all to pr[o]voke Officer T. Ward in her actions besides the fact that she allegedly knew [P]laintiff had a harassment claim against Counselor K. Morgan" and that, allegedly, Morgan and Defendant Ward were having an affair. *Id.* at 6. Plaintiff claims that, ". . . for [Defendant] Ward to demand [Plaintiff] and Powell to 'shut up' regarding an 'unauthorized meeting' was unreasonable and unlawful restriction of speech in violation of the First Amendment of the United States Constitution." *Id.* Plaintiff states that he spent "from January 22, 2011 to February 10, 2011 in the 'SHU' and received 10 days loss of Good time credits, and 60 days commissary restriction" as a result of this event.[1] *Id.*

In connection with his second claim, Plaintiff challenges the constitutionality of P.S. 5350.28. *Compl.* [#1] at 9. He asserts that the provisions of this regulation are "ambiguous, and discriminatory, and impinges upon the rights, and liberty interests of any prisoner involved in the Literacy Program . . . ." *Id.* He argues that there are elements of the regulation or implementation of the regulation that violate the Fifth Amendment and deprive him of a liberty without due process. *Id.* Plaintiff, however, does not allege with clarity how he has personally been affected by this regulation.

In addition, Plaintiff asserts a Privacy Act violation within this claim. Plaintiff appears to allege that records in his BOP central file relating to his high school diploma or GED are incorrect, and he therefore seeks to correct that inaccuracy. *Id.* He acknowledges that the

---

[1]  Despite the parties lack of explanation, the Court assumes that "SHU" means Special Housing Unit, which is a form of administrative segregation.

BOP is exempted from some requirements under the Privacy Act but complains that it allegedly uses the exemption to "further punish the individual in most cases." *Id.*

The crux of Plaintiff's second claim appears to be related to his unsuccessful attempt to verify his high school education while he was confined at FCI Englewood. He alleges he attempted to contact the institution that issued him his high school diploma multiple times by mail. *Id.* at 11. On or about April 6, 2011, Plaintiff finally received a letter in reply to his attempt to contact the Adult & Community Education (Kennebec Learning Center). *Id.* The letter stated that he completed the course of study prescribed by the Augusta School Board to attain a Cony High School diploma and that he was awarded his diploma in June of 1982; the letter enclosed "a copy of his diploma embossed with [the Cony High School] official seal." *Id.* at 11, 37-38. However, Plaintiff contends that Defendant Garcia, as Warden, and Defendant Arviza, as SOE, have not acknowledged this letter and have shown no proof that they have attempted to contact the institution in order to verify that Plaintiff received a diploma. *Id.* at 11.

In late May and early June of 2011, Plaintiff was transferred to U.S.P. Leavenworth. *Id.* at 11-12. Plaintiff asserts that on June 14, 2011 he presented his diploma (a copy of the original) to Mr. R. Treadway, the SOE at U.S.P. Leavenworth, who allegedly stated that he must attend classes until his diploma was verified with the school. *Id.* at 12. Plaintiff contends that he informed Mr. Treadway that he had already taken the mandatory 240 hours and chose to opt out. *Id.* Plaintiff returned to Mr. Treadway's office the next day and Mr. Treadway informed him that he had no problem with verifying Plaintiff's diploma and immediately did so by placing a telephone call. *Id.* Plaintiff concludes that this is the way

it should have been done at FCI Englewood.  *Id.* He claims that Warden Garcia and subordinate agents/staff under his direction are liable for their arbitrary and willful discriminatory actions.  *Id.* at 13.

In connection with his third claim, Plaintiff alleges a violation of his Eighth Amendment rights by staff of Defendant BOP for their "deliberate indifference to his serious medical needs."  *Id.* at 14.  Plaintiff asserts that he was injured on the morning of March 10, 2010 when he slipped on ice and injured his shoulder.  *Id.*  One week later, he went to the sick call line to schedule an appointment, but was not seen by BOP medical staff for a month.  *Id.* at 15.  Plaintiff was scheduled for an x-ray "nearer to six months after the injury occurred."  *Id.*  During that six-month period he requested medication to alleviate the pain and, on an undetermined date, was provided with "Mapap."  *Id.* at 16.  In September 2010, medical staff gave him a two-page "print out" that contained a list of "range of motion" exercises.  *Id.*  Regardless, Plaintiff alleges that between the date of the injury and the date of filing of the Complaint nothing had been done to properly diagnose the medical problem. *Id.*

Plaintiff seeks separate relief for each of his claims.  In connection with Claim One, he requests "the (10) ten days loss of 'good time credit' to be reinstated.  To be further compensated in equity for the '[irreparable]' loss of time spent in the 'SHU,' and if 'GTC' are not restored as requested.  And to place sanctions upon the individuals that are responsible for the deprivations."  *Compl.* [#1] at 19.

In connection with Claim Two, he requests "the Court to review BOP's interpretation of CFR § 544.70 through § 544.831, resulting in the PS; 5350.28, Literacy Program (GED

Standard).  To be compensated in equity from time spent (240 hours in class) and 'shots' and other sanctions placed against me without 'due process.'  Finally, to amend PS; 5350.28 to [promote] a 'less discriminatory policy' towards inmates."  *Id.*

In connection with Claim Three, he requests "'proper, and/or adequate' medical treatment that is paid for by the 'tortfeasor/wrongdoer.'  To also be compensated in equity for pain and suffering, both physically, and mentally for the injuries sustained[,] and to be compensated for future harms, as there is a percentage of permanent disability involved with this injury, an[d] the [likelihood] of joint replacement as part of the future harm."

Defendants seek to dismiss all of Plaintiff's claims.  *Motion* [#47].  Pursuant to Fed. R. Civ. P. 12(b)(1), they seek to dismiss his claims on the basis of mootness because of Plaintiff's release from BOP custody on August 21, 2012.  *Id.* at 5-8; *Supplement* [#53].  In the alternative, Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6) on the basis that Plaintiff has failed to state any claim on which relief may be granted.  *Motion* [#47] at 8-15.  The Court recommends that Defendants' Motion be granted on the basis of Fed. R. Civ. P. 12(b)(1), as outlined below.

## II.  Standard of Review

The purpose of a motion to dismiss pursuant to Rule 12(b)(1) is to test whether the Court has jurisdiction to properly hear the case before it.  Dismissal of a federal claim for lack of subject-matter jurisdiction "is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666

(1974)).

A motion to dismiss pursuant to Rule 12(b)(1) may take two forms: a facial attack or a factual attack. When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.2d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint supported by affidavits or other documents, the Court makes its own factual findings and need not convert the motion to one brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id.* at 1003.

Finally, the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should it "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [their] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III. Analysis

By seeking dismissal on the basis of mootness, Defendants request a ruling on whether the Court has subject matter jurisdiction over this action. The Court will therefore discuss this argument first. *See Herrara v. Alliant Specialty Ins. Servs., Inc.*, No. 11-cv-00050-REB-CBS, 2012 WL 959405, at *3 (D. Colo. Mar. 21, 2012) (stating that issues of subject matter jurisdiction "must be resolved before the court may address other issues

presented in the motion").

Defendants argue that all of Plaintiff's claims are now moot because Plaintiff is undisputedly no longer in the custody of Defendant BOP. *Motion* [#47] at 5-8; *Supplement* [#53]; *Response* [#55]. Because Plaintiff is no longer incarcerated, Defendants argue that the relief he seeks renders moot all of the claims he asserts. *Motion* [#47] at 7-8.

In his Response, Plaintiff concedes that the relief he requests is moot. *Response* [#55] at 1. However, he argues that the issues raised within the Complaint are not moot because "all the injuries and conditions within the Complaint existed, and the 'wrongdoers' will simply avoid these issues over 'Mootness' within Plaintiff's Complaint, and request for Relief and go on to continue their behavior unchecked upon inmates currently with the B.O.P.'s custody." *Id.* at 2.

Mootness is an issue of subject matter jurisdiction, which can be raised at any stage of the proceedings.[2] *Kennedy v. Lubar*, 273 F.3d 1293, 1301-02 (10th Cir. 2001). Because "federal courts are courts of limited jurisdiction," the Court must have a statutory basis to exercise its jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Statutes conferring subject-matter jurisdiction on federal courts are to be strictly construed. *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Id.* (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). When reviewing a factual attack on a complaint, the Court generally "may not presume the truthfulness of the complaint's

---

[2] The Court may also consider the question of subject matter jurisdiction *sua sponte* at any time. *McAlester v. United Air Lines, Inc.*, 851 F.2d 1249, 1252 (10th Cir. 1988); *Smith v. Krieger*, 643 F. Supp. 2d 1274, 1293 n.6 (D. Colo. 2009).

factual allegations."[3]  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  In a factual attack, the moving party challenges the facts upon which subject-matter jurisdiction depends.  *Id.*  The Court therefore must make its own findings of fact.  *Id.*  In order to make its findings regarding disputed jurisdictional facts, the Court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing."  *Id.* (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990); *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir.), *cert. denied*, 484 U.S. 986 (1987)).

This Court has no jurisdiction to consider moot cases, that is, cases in which "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980) (citation omitted).  "It is a basic principle of Article III that a justiciable case or controversy must remain extant at all stages of review, not merely at the time the complaint is filed."  *Deberry v. Davis*, 460 F. App'x 796, 799 (10th Cir. 2012) (internal quotations and citation omitted).  A claim may become moot at any point in the controversy and deprive the Court of authority to decide questions which had previously been at issue.  *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990).  "[I]t is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome."  *McLendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996).

The relief sought by Plaintiff is declaratory and injunctive in nature.  *See Compl.* [#1]

---

[3]  Here, the Court may do so because Plaintiff attested to the veracity of his Complaint pursuant to 28 U.S.C. § 1746.  *See Compl.* [# 1] at 22.  The Court therefore treats the Complaint as an affidavit and accepts the allegations stated therein as true in the absence of a contradictory material fact proffered by Defendants.  *See Green v. Branson*, 108 F.3d 1296, 1301 n. 1 (10th Cir.1997).

at 19. Even though he states that he wants to be "compensated," he clearly states that he

seeks to be "compensated in equity" and not monetarily. *Id.* (stating, *e.g.*, "compensated

in equity for the '[irreparable]' loss of time" and "compensated in equity for pain and

suffering").

Importantly, Plaintiff concedes that the relief he seeks is now moot. *Response* #55]

at 1. Despite Plaintiff's further assertion that the issues relating to his claims are not moot

and that nothing will change without this law suit moving forward, his release from BOP

custody and his admission that the relief he requests is moot means that he no longer has

a *personal* stake in this matter. *See McLendon*, 100 F.3d at 867; *Geraghty*, 445 U.S. at

396 (stating that application of the mootness doctrine requires examination of whether "the

parties lack a legally cognizable interest in the outcome"). To illustrate, the Court briefly

discusses application of the mootness doctrine to the relief Plaintiff seeks.

"Where a plaintiff seeks both an injunction and declaratory relief, the district court

has a duty to decide the appropriateness and the merits of the declaratory request

irrespective of its conclusion as to the propriety of the issuance of an injunction." *Jordan*

*v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) (internal quotations omitted) (quoting *Super*

*Tire Eng'g Co. v. McCorckle*, 416 U.S. 115, 121 (1974)). "It is well established that what

makes a declaratory judgment action a proper judicial resolution of a case or controversy

rather than an advisory opinion is the settling of some dispute which affects the behavior

of *the defendant toward the plaintiff*." *Id.* (citations omitted). In other words, "where a

plaintiff seeks a declaratory judgment against his opponent, he must assert a claim for relief

that, if granted, would affect the behavior of the particular parties listed in his complaint."

*Id.*

Here, Plaintiff seeks a declaratory judgment that his constitutional rights were violated. However, even if the Court were to grant his request, the declaratory judgment would not "affect[ ] the behavior of defendant[s] toward the plaintiff," because Defendants would not be required to take any course of action. *See Rhodes v. Stewart*, 488 U.S. 1, 4 (1988). Plaintiff is no longer in the custody of Defendant BOP. *Supplement* [#53]. Therefore, whether or not the Court grants Plaintiff's request for declaratory judgment, Defendants' future behavior toward Plaintiff will not be affected, because a holding that Plaintiffs' constitutional rights have been violated would not necessitate changes in how he is being treated by Defendants. In other words, Plaintiff is seeking a retrospective opinion that Defendants wrongly harmed him, which is an impermissible use of a declaratory judgment. *See Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977) (holding that a claim for declaratory relief was moot where the "primary claim of a present interest in the controversy is that [the plaintiff] will obtain emotional satisfaction from [the] ruling"); *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) ("This 'legal interest' must be more than simply the satisfaction of a declaration that a person was wronged.").

Plaintiff's requests and supporting allegations found in the Complaint simply do not state "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). The Court therefore finds that Plaintiff's requests for declaratory judgment are moot. *See Green*, 108 F.3d at 1300 (conditions of confinement claim mooted by transfer and release of inmate) (citing *Lavado*

*v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993) (inmate's suit for declaratory judgment as to whether correctional officers violated his constitutional rights by opening his privileged mail outside his presence was rendered moot by inmate's release from prison)).

The Court next briefly turns to the injunctive relief sought by Plaintiff. "Where a plaintiff seeks an injunction, his susceptibility to continuing injury is of particular importance—'[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Jordon*, 654 F.3d 1012, 1024 (10th Cir. 2011) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Plaintiff has not alleged facts illustrating that he is being injured in an ongoing and continuous manner based on his past incarceration with Defendant BOP. He has simply not alleged the "real and immediate" injury necessary for entry of injunctive relief. *See Rizzo v. Goode*, 423 U.S. 362, 372 (1976) (stating that claim for injunctive relief was moot where allegations of "real and immediate" injury were attenuated). The Court therefore finds that Plaintiff's requests for injunctive relief are moot as well. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (prisoner's claims for injunctive and declaratory relief concerning prison conditions were moot where prisoner had been moved to another prison unit); *Inmates v. Owens*, 561 F.2d 560, 562 (4th Cir. 1977) (when a prisoner is released from prison, there is no longer a substantial controversy between the former inmate and prison officials of sufficient immediacy and reality to warrant the issuance of either injunctive or declaratory relief)).

In light of the above-stated legal precedent, the Court lacks subject matter jurisdiction over Plaintiff's claims. Thus, if the Court issued an order granting the relief

-12-

requested, the order would be an impermissible advisory opinion regarding Defendant BOP and its staff and would have no "effect in the real world" for Plaintiff.  *See Jordan*, 654 F.3d at 1029.  "[A]s a federal court, [the Court is] not in the business of rendering such feckless judgments."  *Deberry*, 460 Fed. App'x at 799.  Thus, the mootness doctrine precludes Plaintiff's constitutional claims and precludes any declaratory judgment or injunctive relief that could be imposed against Defendants.  *See Jordan*, 654 F.3d at 1026 (if the plaintiff has not named as defendants "individuals or entities that are actually situated to have their future conduct toward the plaintiff altered by the court's declaration of rights . . . , courts are likely to determine that they cannot accord the plaintiff effective declaratory relief and that the action is moot.").

In sum, the Court **recommends** that the Motion be **granted** and that Plaintiff's claims be **dismissed without prejudice as moot** for lack of subject matter jurisdiction. *See Lewis v. Burger King*, 398 F. App'x 323, 325 n.3 (10th Cir. 2010) (dismissal due to mootness must be without prejudice); *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing established rule that "where the district court dismisses for lack of jurisdiction . . . , the dismissal must be without prejudice" because a court without jurisdiction lacks power "to make any determination of the merits of the underlying claim").

## IV.  Conclusion

Accordingly,

IT IS RESPECTFULLY **RECOMMENDED** that the Motion [#47] be **GRANTED** and that Plaintiff's Complaint [#1] be **DISMISSED without prejudice**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.   A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).   A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.   *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 15, 2013, at Denver, Colorado.

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge